Good morning, Your Honors. May it please the Court. Everytown for Gun Safety's FOIA request requires ATF to create 10 sets of customized statistical analyses from data in ATF's Firearms Trace System Database. Even though, for nearly a decade, Congress has passed a series of appropriations acts that have plainly prohibited ATF from disclosing this data, Congress's intent to publicly bar disclosure of this database is clear from the space of the statute, and that intent has to be given effect. Nor does a specific exception to this broad bar and disclosure apply to Everytown's request. That exception only allows ATF to continue its practice of publishing certain reports at its discretion. And finally, even if Exemption 3 somehow doesn't apply here and allows the public disclosure of this data, ATF would have to create new records that currently don't exist to respond to Everytown's FOIA request, which FOIA doesn't require the agency to do. So, turning to the first point, Your Honors, this Court uses a two-part inquiry to determine whether Exemption 3 applies to a specific FOIA request. The second one is easy to dispense with. The parties don't dispute that the withheld material from this database falls within the statute's coverage. But the core question, obviously, is whether the 2012 TRT writer or the TRT amendment is an exemption statute within the meaning of Exemption 3. We submit that it is. The Supreme Court and this Court has held that the plain language of the statute expresses Congressional intent. In other words, the plain language of the statute, it's not a direct prohibition on disclosure. It's a prohibition on funding any disclosure. Does that make a difference? I mean, it was in an appropriations bill and now an appropriations act. I think it's probably a continuing resolution. And it's a funding measure. It just says ATF shall spend no appropriated funds to disclose. Isn't that the strict reading of that particular provision? Your Honor, I have two points that I'd like to make in response to your question. If you look at the 2012 TRT writer, which has been published, it's page 32 of our special appendix. It's a dense statute, I admit. But in the middle, in addition to the funding prohibition that your Honor pointed out, there's a clause which makes clear that all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner. That makes clear that and that would be broad enough to encompass FOIA, data from its firearms trace system database. On the second point, your Honor, the Seventh Circuit in 2012... Isn't that statute capable of being read? And maybe I'm not reading it correctly, you can help me on this. That there are various provisions that require, that authorize disclosure, but then there is a further withholding directive with regard to people who can legitimately receive the material. And that that's what all that language that you just referred to applies to. In other words, not to ATF, but to the people who would receive from ATF, the disclosure that is authorized. So, if I'm understanding your Honor's question, the first part of the TIART writer provides that no funds appropriated under this or any other act may be used to disclose part of the database. And then it goes on to provide that information can be shared to specific law enforcement personnel for purposes, right? And then there's a semicolon. And then it says that there was a prior to the semicolon that precedes all such data. It prohibits those law enforcement people from publicly disclosing that data. And then it goes on to say that all such data shall be immune from legal process and so on. So, I read together, it merely states that data from the Firearms Trade System database may be shared with law enforcement personnel, but in any event, all such data shall be immune from legal process and shall not be disclosed in any manner. Moreover, in the... As far as you're concerned, there's no distinction to be drawn between a funding prohibition and a direct prohibition in this particular answer. That's correct, Your Honor. This is... If there were a distinction, one could see that, you know, that ATF might be obligated, but wouldn't have the funds available. And I don't understand how ATF has the funds available under this to disclose under the prohibition, of the TR prohibition in any event. I mean, so they actually have a prohibition, but they also don't have the funds to disclose. And you're saying that if you should lose here, that ATF would use appropriated funds to disclose, even though Congress has forbidden it. And that has... That particular non-funding provision doesn't have any... That wouldn't seem to me to have a direct relationship to the FOIA amendment of 2009. So, Your Honor, this question was actually addressed in the Seventh Circuit decision in the 2005 City of Chicago case. In the 2005 decision, the Seventh Circuit considered the argument that the first clause of the TR writer, it was then the 2005 TR writer, related to funding, but it held that the 2005 TR amendment was an exemption three statute because the clause, quote, all such data shall be immune from legal process, close quote, cut off access to the TR system for any reasons unrelated to law enforcement. It's also worth noting that Congress broadened the bar on public disclosure even more in the 2006 TR writer by adding the clause shall be inadmissible and evidence shall not be used. So, can I ask you this question? Didn't you concede below that the 2012 writer doesn't cite exemption three as is currently required by open FOIA? And you described it as an exemption three statute, but don't exemption three statutes have to cite exemption three? We concede that the 2012 writer is the operative writer and we concede that the statute says what it says, but our position is that pursuant to Supreme Court precedent in Dorsey v. United States, Lockhart, and Marcello v. Bonds, um, Congress is not required to refer to an express reference that's contained in B3 in order to effectuate its intent to bar FOIA disclosure. So, your argument isn't that this this is an exemption three statute, it's that this is just a later statute that was passed and it says that this data is not subject to FOIA, irrespective of the requirements of exemption three, right? Isn't that your argument? It's an exemption three statute to the extent that there is, uh, sorry, it's an exemption three statute to the extent that this statute and its predecessors clearly state that under no circumstances, well not under, well under circumstances not applicable here, that the agency cannot disclose firearms trace system data, um, to the public, again, in legal process, in discovery, as evidence, or in any manner, um, and by making that intent clear, uh, Congress effectively, um, exempted itself from the express reference requirement that's contained in B3, but it is still a B3 statute insofar as it is a conventional bar to disclosure under FOIA that you've reserved some time for rebuttal, so we'll hear from you again, but, uh, in the meantime, let's hear from the appellee, um, Ms. Leskowitz. Good morning, and may it please the court. In this case, Everytown asked the government to produce certain records pertaining to firearm suicide data through the Freedom of Information Act, and it is indisputed that these records are in the ATF's possession. However, the ATF has refused to disclose these documents for two separate reasons. First, the government points to the TR rider, arguing that it is a withholding statute under Section B3 of FOIA, and next, the government says that producing these records would amount to the creation of new documents. So, turning first to the TR rider, the government argues that this appropriations rider qualifies as a withholding statute under Section B3 of FOIA, despite the fact that the 2012 rider does not meet the textual requirements of Section B3, specifically the requirement enacted by the Open FOIA Act of 2009. And before the district court, the government tried to avoid this issue by arguing that it was the 2008 TR rider that prohibited the disclosure, because as the government then admitted, the 2012 rider didn't qualify as a withholding statute. Having lost that argument— Can I ask you a question about this, about this qualification? So, uh, let's—I understand that the TR rider might be, uh, require some interpretation, but if Congress had unambiguously written a statute that just says, this data is not subject to FOIA disclosure, outright, without any ambiguity, but it didn't refer back to B3, we would still need to give effect to that statute, wouldn't we? Just because it doesn't meet the requirements of B3 wouldn't mean that we could ignore it, or would it? Is that particular case, even though the TR rider would not comply with Section B3, the question then that is then before the court is whether Congress, in passing that later statute, explicitly or implicitly intended to exempt the later statute from the requirements of the Open FOIA Act. And I think in the case of— So the question, so sorry, so the question isn't then that, uh, whether it complies with B3, it's about whether this statutory language is fairly read as Congress saying that this data is exempt from FOIA, right? The B3 thing, um, isn't decisive. Well, Your Honor, in 2009, when the Open FOIA Act passed, uh, when Congress passed the Open FOIA Act, it did include this express reference requirement, um, and so going forward, every— when Congress passed a future statute, it was presumed to be aware of that express reference requirement. And the fact that— I understand, I get that argument, but so then what that argument amounts to is that in 2009, Congress passed this language, which had the effect of exempting the data from FOIA. I don't think you just speak to the 2009, uh, language would do that. And then it passed Open FOIA, and then in 2010, it passed the exact same language, but passing the exact same language would have the opposite effect. It now requires a disclosure, uh, because it pliably repeals the 2009 statute and doesn't make express reference to B3. So you're saying that by reenacting statutory language that had previously been held to be an exemption from FOIA, Congress was authorizing FOIA disclosure. Is that your argument? Well, no, Your Honor. Two points to that. First, I understand that the ATS is arguing that there was uniform judicial interpretation of the TR Grider prior to the Open FOIA Act, but that's actually not the case. In City of Beretta, uh, in City of New York— I'm sorry, City of New York v. Beretta, the Eastern District of New York in 2006 explicitly rejected the interpretation of the Seventh Circuit, and it held that the TR Grider had no application to data that is not to be disclosed to the use of federally appropriate funds, and it held that the Grider was simply a funding statute. So, you know, what the ATS is saying that clearly Congress must have been in passing the 2010 and 2012 FOIA statute using the interpretation of the Seventh Circuit, but it's not clear why it would be relying on the Seventh Circuit judicial opinion as opposed to the EDNY opinion. But in either case, even if there has been a judicial— Sorry, sorry, you can finish the thought. I was going to say, even if there had been a judicial interpretation of that earlier statute, that's still not enough to meet the clear and manifest standard that Congress has required for implicit repeal. And, sorry, and I'll stop there. Okay, so, but based on the argument that you had made before, uh, seems to me— Well, there's no question about implicit repeal with respect to the earlier riders, right? Like, we're saying that it covers the same ground, so the later rider repeals the earlier rider, right? So, you're saying it doesn't meet the standard of implicit repeal of the open FOIA statute. Is that right? That's exactly right. Does it need to— Does it need to— Does it need to impliedly repeal the open FOIA statute? So, if the open FOIA statute creates a general rule that provisions should be, uh, uh, read to qualify for B-3 if it has an express reference, for a statute to exempt itself from that requirement, it doesn't need to repeal open FOIA, does it? Well, what it needs to do is, as Justice Scalia said in the dissent of the Dorsey opinion, is accomplish a pro-tonto repeal. So, the standards for that pro-tonto repeal or exception are the same as they would be in any other type of repeal. And there, again, the standard is very high, which is, you know, clear and manifest requirement. And, you know, I understand that— I think that the ACF is arguing that the standard is less than this clear and manifest repeal. And that just can't be the case. You know, I'll point the court to the Supreme Court's recent decision in Burwell v. Hobby Lobby, where the Supreme Court was discussing a very similar, you know, reference, a very similar provision in the Religious Freedom Restoration Act. And what the Supreme Court said there, I believe, is it was discussing about a failed amendment to the ACA. And it said, even if a rejected amendment to the bill could be relevant in other contexts, it surely cannot be relevant here, because any federal law is subject to RFRA So, again, there has to be a clear and manifest standard that is met by the later Congress to exempt from the earlier statute. I understand that. So, like, it seems to me that if we had a Tierhart writer that appeared for the first time in 2010, then maybe it needs to be read in light of the open FOIA requirement. But if—and I take it that you have the suggestion, say, that there was a uniform requirement. So, just for purpose of this question, if it were clear to Congress when it passed in 2009 that it was exempting the data from FOIA disclosure, and then it passed the same language again, you'd say that that succeeds. It just sounds like you're disputing whether the 2009 language really did exempt the data from FOIA. Well, Your Honor, I just want to be clear that when, you know, it was very important that when the 2012 statute was passed, that it decided—that Congress decided not to add this requirement, even though it made similar additions to other statutes. I think it did this over 10 or so times in 2010—both in 2010 and in 2012. So, when Congress passed— Counselor, can you give me a—you're saying Congress intentionally decided not to include the specific reference language, right, in 2010? Correct. That seems to be your point. Can you give me a reason why that would be the case? I mean, it seems to fly in the face of logic. If that was required and they were fully aware of the open FOIA, why wouldn't they want to comply with it? Or it came out of a different community or something of that nature? Well, I think there's no, you know, there's no legislative history on the subject for the 2012 T.R. rider, but it's very possible that the T.R., you know, that that Congress was adopting the view of the T.R. rider that had been adopted by the Eastern District of New York and City of New York v. Beretta, which is simply that the T.R. rider was a funding provision, which is exactly, you know, on its face what all that it says to do—that the ATF cannot spend appropriated funds on disclosing this data. And now it had a clear instruction of how to make— But isn't everything the ATF—sorry, go ahead. Isn't everything the ATF does with appropriated funds, like, isn't that how Congress prohibits agencies from doing things, saying that they can't take an action with appropriated funds? Well, I think if it was—Congress could have passed a statute, and I think it does in other contexts that I think we cite, too, in footnote 7, one footnote 7 of our brief, that says that, you know, certain information shall not be disclosed by an agency, and it does so with exclusive language. Well, there is such a provision in this where it says all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inimitable in evidence, and shall not be used, relied on, or disclosed in any manner. So can I ask, if it's not immune from FOIA, what does that provision do? You know, I think that provision does exactly what the Eastern District of New York held that it did in City of New York v. Beretta, which is, when you look at the TRWR, at first, it's a prohibition on the use of certain funds, and then it has exceptions to that prohibition. And it says that funds can be used to disclose this data to law enforcement, but then that information that is disclosed to law enforcement, you can't do an end run around it, and that data still has to be protected. So, and if you look at when this immune from legal process language was added to the TRWR, it was added to the TRWR in 2005 at the exact same time when the exceptions for law enforcement disclosure was added. So it makes sense in context of this appropriations rider to interpret that clause as referring to information that is disclosed to federal law enforcement by the ATF using appropriated funds. But if there is that protection from disclosure, would it mean that much if any member of the public could turn around and get the exact same data through a FOIA request? Well, actually, Your Honor, I disagree with the premise that any member of the public could get the exact same data, because the only way that a member of the public could be able to get that is through a FOIA request. And FOIA has exceptions for both privacy and law enforcement concerns that were not raised here. Whereas when we're talking about the ATF disclosing documents to other law enforcement agencies, that information may contain privacy issues, names of people, or information that may implicate law enforcement concerns. So, you know, the... Okay, that's reasonable. I get that argument. If my colleagues don't have further questions, we'll hear from Ms. Onizawa again on rebuttal. Thank you, Your Honors. So there are three points I'd like to make. First is that the government doesn't contend that the 2012 TRR, or even the 2010 TRR, is attempting to repeal the Open FOIA Act. We acknowledge that Exemption 3 remains in effect, and it's our position that it can continue to serve as an important background principle of statutory interpretation relating to Congress' intent to shield or permit certain records from FOIA disclosure. But as we've cited in our brief, the Supreme Court has stated that as a general matter, Congress is free to create a statutory bar to disclosure by any clear means other than having to cite Exemption 3. And that's what the 2012 Congress did. Based on the plain text of the statute itself, the history, the verbatim bar on disclosure that's continued for close to a decade, the 2012 rider implicitly exempted itself from the Open FOIA Act's express reference requirement. Second, Congress has, I'm sorry. So what about opposing counsel's argument that actually it was ambiguous and the Seventh Circuit thought it was a bar to disclosure, but the Eastern District of New York did not, and so there wasn't a clear or uniform judicial interpretation of this language? So I believe the Eastern District decision was issued in late 2005 after the Seventh Circuit had ruled in ATF's favor. And I wanted to point out that the 2006 rider includes the new clause in the event, you know, just to make clear that there's no ambiguity about what Congress wanted to do. The clause, all such data shall be not only immune from legal process, but it added, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner. The Seventh Circuit in the 2005 case was focusing only on the 2005 rider, which simply said that all such data shall be immune from legal process. So then, so in strengthening the 2006 rider, I think Congress's intent was to erase any doubt or any ambiguity as to whether the firearms trace system database was open to any and all FOIA requesters. And then the, so the third point is that to the extent there is any ambiguity in the language, and we submit there, there isn't one, the legislative history supports the conclusion that Congress has always intended to bar the firearms trace system database from FOIA disclosure. We cited two house reports, which stated that the TR amendment was intended to ensure that ATF would not take any action under the FOIA with respect to law enforcement records housed in the database. There's no evidence in the statutory text of the various iterations of the TR amendment that Congress meant to repeal the prohibitions against disclosure. Our brief slide is the City of Chicago case. Thanks very much, Ms. Onizawa. The case is submitted.